<div style="float:right">THIRD
MUNICIPALITY
*v.*
URSULINE
NUNS.</div>

evident intendment, it cannot be held to be an exposition of a limitation of the power of the municipal authority, but it is merely an assertion of the fact of its non-exercise as to unincorporated *faubourgs*.

A recent act of the legislature of May 4, 1847, has removed the difficulties resulting from the condition of the legislation on the subject of taxation by the municipal government of New Orleans, so far as the future is concerned. The collection of the arrears of taxes on this description of property, I think, ought to be subject to the abatement I have stated.

---

## FREEMAN *v.* STACY.

A sale under a *fi. fa.* issued on a judgment the amount of which exceeded three hundred dollars, made after the promulgation of the stat. of 8 Feb. 1842, and before the stat. of 6 April, 1843, in a parish in which a newspaper was published at the time, and not advertised therein, will be annulled. Art. 669 of the Code of Practice, and the amending act of 28 Feb. 1828, were revived by the stat. of 8 Feb. 1842, repealing that of 8 March, 1841.

The fact that the discontinuance of a newspaper rendered it impossible to publish the advertisement of a judicial sale therein as often as required by art. 669 of the Code of Practice, will not excuse the omission to publish such advertisement before the discontinuance of the paper.

APPEAL from the District Court of Concordia, *Curry,* J. The plaintiff appealed from a verdict and judgment rendered in favor of the defendant. *T. P. Farrar* and *Thomas,* for the appellant. *Stacy* and *Sparrow,* for the defendant. The opinion of the majority of the court was pronounced by

SLIDELL, J. This is a contest concerning the title to a slave between the plaintiff and *Reynolds,* the lessor of *Stacy.* The circumstances under which *Reynolds* acquired title are stated in the case of *Farrar* v. *Stacy, ante* p. 210. Pending the attachment suit of which we have there spoken, and before judgment therein, *Spencer,* the defendant in attachment, executed an act of sale of the slave in favor of *Freeman,* in consideration, as therein stated, of the sum of five hundred dollars paid to him by *Freeman.* The act stated that the slave was one of those attached in the suit of *Briggs, Lacoste & Co.* v. *Spencer.* This act was duly recorded on the day of its date. It is contended by the defendant that this was the purchase of a litigious right. The circumstances under which the sale was really made were, that *Spencer* was the debtor of *Freeman,* and conveyed the slave to him on account of his indebtedness.

We see nothing illegal in this. It was a *dation en paiement* to a *bonâ fide* creditor, of property subject to encumbrance. Even if *Spencer's* title be considered a litigious right, which is not clear, this would subject *Freeman* to no equity in favor of *Reynolds,* it having been, in the words of the Code, "transferred to a creditor as a payment of a debt due to him." Arts. 2624, 2622. We have stated in the case of *Farrar* v. *Stacy,* that the judgment in the attachment suit of *Briggs, Lacoste & Co.,* upon the execution of which judgment the slave was sold, was reversed upon a devolutive appeal. The encumbrance, therefore, of the attachment being extinct, the contest between these parties turns solely upon the validity of the judicial sale, under which *Reynolds* claims title. This sale *Freeman* alleges to be invalid, by reason of the non-observance of the legal formality of advertisement.

The sale was made in the month of August, 1842, the seizure under *fieri*

*facias* having been made on the 2d July, 1842. Under the then existing laws it was necessary that this sale, being in the case of a judgment for an amount over three hundred dollars, should be advertised in a newspaper, if there was one published in the parish. The defendant, however, insists that this formality was dispensed with, by the statute of February 8th, 1842.

The Civil Code, art. 3522, and the Code of Practice, art. 669, required a newspaper advertisement. By the act of 1828, this general requisition was modified, and it was enacted, that when the judgment on which the execution issues is under $300, it shall be unnecessary to advertise in a public newspaper. In 1841 the law was again changed, the requisition again became general, and it was made "the duty of the sheriff in any parish of the State in which a newspaper is published, to publish *all* his advertisements for sales in said paper," &c., and "all laws, or parts of laws, inconsistent therewith" were repealed. In 1842, another act was passed, by which it was declared, "that the act entitled an act relative to sheriffs' sales, approved 8th March, 1841, be and is hereby repealed, and that all acts relative to advertising at sheriffs' sales in force at the time of the passage of the said act be, and the same are hereby *revived*." The result of this complicated legislation, so well calculated to create confusion and mistakes, nevertheless undoubtedly was, that a newspaper advertisement should be made when one was published in the parish, and when the amount of the judgment exceeded three hundred dollars. Such also was the opinion of our predecessors on this very point. See *Ex parte Groves*, 12 Rob. 131.

The return of the *fieri facias* exhibits an advertisement by posting only; and a witness states that the property was not advertised in the newspaper published in the parish at the time when the seizure was made, and for some time subsequently. The first day for advertising was the 6th July, 1842, and the sale took place on the 6th August, 1842; the newspaper was regularly published every week during the year 1842, down to the 16th July, 1842. The advertisement might have been published during a portion of the time; and the subsequent impossibility does not excuse the previous omission.

*Spencer*, under the state of facts to which we have referred in the case of *Farrar* v. *Stacy*, has precluded himself from any objection to this sale; but his acts subsequent to the recorded conveyance to *Freeman* cannot affect the latter without his assent, which is in no way shown. He stands before us as a *bonâ fide* purchaser of property subject to a prior incumbrance. His title could not be divested at the suit of the privileged creditor, except by a sale conducted in conformity to law. No such sale has been made; and the *incumbrance* created by the attachment has in the mean while become extinct. So that the unencumbered legal title is now in the plaintiff, who must have judgment accordingly.

Upon the claim for the value of the slave's labor, we consider the plaintiff entitled, under the evidence, to recover, at the rate of $75 a year, from judicial demand, until the slave be restored to his possession.

It is therefore decreed that the judgment of the court below be reversed, and that the slave *Frank*, in the petition described, be restored by the said *Reynolds* to the said plaintiff as the lawful owner thereof; and that the said plaintiff further recover from the said *Reynolds*, as wages for the said slave, at the rate of seventy-five dollars per year, from the 2d day of December, 1842, until delivery of said slave be made to the said plaintiff; the said *Reynolds* paying the costs of suit in both courts.

EUSTIS, C. J., dissented.