(119 So. 413)

No. 29529.

### BROWN v. BANK OF MINDEN (MILLER, Intervener).

### MILLER v. BROWN.

Nov. 26, 1928.   Rehearing Denied Jan. 2, 1929.

A. S. Drew, of Minden, and James G. Palmer, of Shreveport, for appellant.

Aubrey M. Pyburn, of Shreveport, and Stewart & Stewart, of Minden, for appellees Miller and Bank of Minden.

ROGERS, J.   The two cases named in the caption were consolidated in the district court for the purpose of trial, but separate judgments were rendered.   Both of these judgments were adverse to J. C. Brown, plaintiff in one of the cases and defendant in the other, and he appealed.   The appeals were lodged in this court in one transcript and assigned a single number on the docket.   They were also argued and briefed together and submitted for decision at the same time.

The suit of Miller v. Brown was for an accounting, the dissolution and the liquida-

tion of an alleged commercial partnership. At the outset of the trial, counsel for the defendant objected to the proof of the partnership by parol evidence, on the ground that such partnership, if formed, was an ordinary and not a commercial one. The objection was properly overruled. The partnership, under the allegations of plaintiff's petition, was organized for the purpose of purchasing timber and logs, operating a sawmill, selling lumber, and carrying on such other business as was incidental or necessary thereto. These purposes are clearly within the definition of a commercial partnership. Civ. Code, art. 2825; Succession of Hamblin, 3 Rob. 130; Nachtrib v. Prague and Sherman, 6 La. Ann. 759; Copley v. Lawhead, 2 La. Ann. 615. Cf. Southern Coal Co., Inc., v. Sundbery and Winkler, 158 La. 386, 104 So. 124, where this court declared that the character of a partnership is determined by the nature of its business, and held to be commercial a partnership which owned a plantation, operated a sugar factory for grinding cane from the plantations of the firm, of the individual partners as well as cane purchased from others, and sold the manufactured product for its account or profit.

The existence of a commercial partnership may be established by parol evidence. Villa v. Jonte, 17 La. Ann. 9; Paradise & Bro. v. Gerson, 32 La. Ann. 534.

Plaintiff alleges that in the year 1923 a partnership was formed between him and the defendant for the purposes hereinabove set forth; that it was agreed that they were to be equal partners in the business, which was to be operated in the name of J. C. Brown, and to share equally in the profits and losses; that shortly after the partnership was formed it opened an account in the Bank of Minden in the name of J. C. Brown, notifying the bank that it was to honor checks drawn against the account by either partner; that defendant was to be actively in charge of the business, was to have the use of an automobile and be paid a salary by the partnership for his services; that plaintiff, R. H. Miller, was to furnish capital and necessary credit; that subsequently the partnership used the name of J. C. Brown Lumber Company; that the sawmill was operated in pursuance to the agreement until May, 1927; that plaintiff procured and furnished capital and necessary credit to enable the firm to conduct its business; that the purpose for which the partnership was formed has been accomplished; and that its assets consist of $50,000 in money and property. Plaintiff prays for an accounting; for the appointment of a liquidator; for an inventory and sale of the partnership property; for the payment of the partnership debts; and for the distribution of its remaining assets in equal proportions between the partners.

Defendant, in his answer, denied the existence of a partnership between him and the plaintiff, but averred that they did have certain negotiations looking towards the organization of a partnership such as is alleged in the petition when and upon plaintiff furnishing all the money necessary to finance the undertaking, but that plaintiff did not, at any time, advance or put into the business any money whatever, hence the partnership was never formed.

The evidence, which we have carefully examined, establishes the existence of the partnership as alleged by plaintiff. In fact, defendant, testifying in the case, would not deny, as he had done in his answer, that such a partnership was formed. On the contrary, he expressly admitted that he was in partnership with the plaintiff from the early part of 1923 until the month of June of the same year, at which time he claimed the firm was dissolved by mutual consent. His testimony on this point is, substantially, that on June 4, 1923, he applied to the plaintiff for an advance of $3,000, which was refused; that he thereupon declared that he would get the

money elsewhere and take the business over, to which declaration plaintiff replied, "All right," and the partnership was ended then and there. Plaintiff, however, denied this. He also denied that any dissolution of the partnership had ever taken place. In this, we think, he is amply supported by the evidence introduced on the trial of the case.

The established facts as shown by the record are that, in the early part of the year 1923, plaintiff, who was the president of the Bank of Minden, and the defendant, who was a sawmill operator, formed a partnership for the purpose of operating a sawmill and selling its product. It was agreed that plaintiff, who was a man of means and extensive credit, was to finance the business of the partnership, and that defendant, who was a man of small means and limited credit, was to be in active charge of its affairs. Defendant was to receive for his services a salary of $150, which was later increased to $250, per month and the use of a car. The profits were to be divided equally between the partners. It was also agreed that the partnership was to be operated under the name of "J. C. Brown," and that an account in that name was to be opened in the Bank of Minden, which was done. The partnership began its business operations through an initial loan of $15,000 which it secured on plaintiff's credit from the Bank of Minden. At the opening of the cotton season in August, 1923, the bank being in need of funds to finance the crop, plaintiff divided the loan into three notes of $5,000 each signed by J. C. Brown (which was the firm name) to plaintiff's order. The notes were then indorsed by plaintiff and, on the faith thereof, were placed with three of the banks in the city of Shreveport. In July, 1924, the partnership obtained a loan of $2,500 from a bank in Homer, La., and on October 24, 1924, it obtained a loan for a similar amount from a bank in Haynesville, La. Both of these loans were evidenced by notes signed by J. C. Brown and indorsed by plaintiff, and were obtained solely on the credit of plaintiff. In October, 1924, plaintiff secured from the Bank of Minden an extension of the line of credit to the partnership, and pursuant thereto borrowed for account of the firm, during the year 1926, the sum of $4,500. All of these transactions with the various banks, it is to be noted, took place subsequent to the date on which, according to defendant's testimony, the partnership was dissolved. Again, the partnership, with a full disclosure of the names of the individual members thereof, secured, from the Creason-Grayson Lumber Company, wholesale lumber dealers, at various times loans, aggregating $11,000. One of these loans for $6,000 was personally arranged for by plaintiff, who received the check therefor made out in the name of J. C. Brown Lumber Company. He indorsed the check in the name of the payee and deposited it in the partnership account. The machinery for the use of the sawmill in beginning its operations was obtained from the Fisher-Davis Machinery Company, of St. Louis, and from the Benoit-Clanton Lumber Company, on the credit of plaintiff. The note for $1,500 given to the latter company was signed in the firm name of J. C. Brown, and indorsed by plaintiff. An account for supplies was established with the Hicks Company, of Minden, solely on the guaranty of plaintiff. This account at times ran as high as $4,000.

Both parties repeatedly declared to persons and firms dealing with J. C. Brown that they were partners, doing business in that name. In the year 1924, when the Builders' Supply Company, of Minden was liquidating its affairs, it paid to J. C. Brown for lumber purchased a sum of money slightly in excess of $3,400. This money was taken by defendant to plaintiff and equally divided between the partners. In the month of October, 1926, the

partnership declared a dividend, resulting in the receipt of $1,000 by each of its members. On June 17, 1927, another dividend of $12,000 was distributed equally between plaintiff and defendant.

The income tax returns for the years 1924 and 1925, prepared by a certified public accountant from the books of the firm in the possession of the defendant, signed by the defendant, show the existence of the partnership and the distributive share of each partner. Numerous fire insurance policies covering property of the firm were issued in 1925 and 1926 to "J. C. Brown and R. H. Miller, doing business as J. C. Brown." These policies were received by the defendant and were kept by him in the Bank of Minden.

It is a matter of no significance whatever that defendant drew personal checks against the partnership account. Under the partnership agreement, he was allowed a salary, in the beginning, of $150 a month. Later his salary was increased to $250 a month. It is shown that he was permitted to draw his personal checks against the partnership account to the extent of his salary, the same to be charged to the salary account on the books of the firm. When he was about to build a home in Minden, defendant opened an account in the bank under the name of the "J. C. Brown Building Account." Although his home had been long since completed, the account was in active operation as late as July, 1926. If the bank account in the name of J. C. Brown was defendant's personal account, there was no good reason, and none has been given, for defendant opening another personal account in the same bank. Nor do we attach any probative value to the fact that certain casualty policies were made out in the name of J. C. Brown alone. These policies were prepared in the city of New Orleans, and were never seen by the plaintiff. Neverthe-

less, they bore the name of the partnership under the original agreement of the parties.

The conclusion we have reached, as hereinbefore stated, that plaintiff and defendant formed a partnership as alleged in plaintiff's petition, disposes of the issues raised in the other suit—Brown v. Bank of Minden—which we are called upon to consider and determine herein. In that proceeding, Brown sued the defendant bank for $26,000 as the amount, less $900, deposited therein under his name, claiming that the deposit was owned by him personally. He alleged: That on June 15, 1927, he received a debit slip showing that $6,000 had been withdrawn from the account and placed to the credit of R. H. Miller, without his authority. That on June 20, 1927, a check for $20,000, drawn by him on the account and deposited in the First National Bank of Minden, when presented to the Bank of Minden, was not paid and was returned with the notation thereon, "Payment was stopped by R. H. Miller, partner." The check was duly protested, and this suit was subsequently instituted. The defendant bank, in its answer to the suit, alleged that the account in question was opened by Brown and Miller in the year 1923 in the name of J. C. Brown as a partnership account, with instructions from the partners to honor checks drawn by either of them; that it had abided by these instructions until notified by R. H. Miller, one of the partners, in writing several months prior to the presentation of the check for $20,000, not to pay any checks drawn on the partnership account without his approval. Defendant admitted that on June 17, 1927, $6,000 was charged to the partnership account and placed to the credit of R. H. Miller, and averred that on the same date J. C. Brown drew $6,000 from the account for his personal use with the consent of Miller, and that this procedure was the declaration of a

dividend between the parties as was their custom.

R. H. Miller appeared in the suit by way of intervention, his petition containing, substantially, the same allegations as are set out in his petition in his suit against Brown, hereinbefore referred to. Intervener averred that the funds on deposit in the defendant bank in the name of J. C. Brown belonged to the partnership existing between him and Brown, and that Brown was endeavoring to withdraw from the bank practically all of the partnership funds and convert them to his own use. He alleged, also, that he had filed suit for the dissolution and liquidation of the partnership. The answer of Brown to this intervention was, in its essentials, the same as his answer to the petition in the suit instituted by Miller against him personally.

The evidence in the record leaves no room for doubt that the funds on deposit in the defendant bank under the name of J. C. Brown belonged to the partnership composed of Brown and Miller. This being the case, Brown was without authority to divert those funds to his personal use. Grobe v. Roup, 44 W. Va. 197, 28 S. E. 699. It is plain that the defendant bank, after it had been served with notice from Miller not to honor the checks of Brown was not justified in assuming the risk of paying one partner and thereby becoming responsible to the other. The bank was not called on to judge the respective rights of the partners, nor to liquidate the business of the partnership.

Plaintiff and appellee in the case of Miller v. Brown, referred to supra, has filed an answer to the appeal, asking that the judgment of the court below be amended so as to condemn the defendant and appellant, and not the partnership, to pay all costs of the suit. But a suit was necessary to determine the rights and claims of the partners and for the appointment of a liquidator to settle the

affairs of the partnership. There is no good reason why the costs of the suit, as well as the costs of liquidation, should not be borne by the partnership. Signorelli v. Federico, No. 28958 of our docket, ante, p. 5, 118 So. 482, recently decided.

For the reasons assigned, both of the judgments herein appealed from are affirmed.